IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| ) | |
| PATRICIA LOUISE TUCKER, ) | Case. No. 10-61004 |
| ) | |
| Debtor. ) | |

ORDER GRANTING MOTION FOR RELIEF FROM STAY

Debtor Patricia Louise Tucker filed a Chapter 7 bankruptcy case on April 28, 2010. Thereafter, Aurora Loan Services, LLC, filed a Motion for Relief from Automatic Stay with regard to the Debtor's residence. The Debtor does not oppose the motion, but the Chapter 7 Trustee has challenged the movant's standing to seek relief from the stay. The Trustee asserts that the movant was not the holder of both the Note and Deed of Trust on the date of the bankruptcy filing, that the Note and Deed of Trust were split as of that date, and that the Deed of Trust is now unenforceable. This is a core proceeding under 28 U.S.C. § 157(b)(2) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons that follow, the Court finds that the motion should be granted.

On October 28, 2005, the Debtor signed an Adjustable Rate Note which identifies the Lender as "New Century Mortgage Corporation, a California Corporation."[1] Also on October 28, 2005, the Debtor signed a Deed of Trust which

---

[1] Intervenor Mortgage Electronic Registration System, Inc., Ex. No. 12.

provides that the Grantee is "New Century Mortgage Corporation,"[2] and again identifies the Lender as "New Century Mortgage Corporation, a California Corporation" ("New Century").[3] The Deed of Trust goes on to state that the beneficiary of the Deed of Trust is Mortgage Electronic Registration Systems, Inc. ("MERS"), as "nominee" for the Lender (New Century) and its successors and assigns.[4] That Deed of Trust was properly recorded with the Recorder of Deeds of Christian County, Missouri.

As is often done, New Century subsequently assigned the Note, and thereafter it was assigned several more times before the bankruptcy filing on April 28, 2010. At the time each of the assignees held the Note, the assignee was a member of the MERS network, which is described in more detail below, and thereby had agreed that MERS could act as its "nominee" in connection with the Deed of Trust. As of the date of the Debtor's bankruptcy filing, Aurora Loan Services, LLC, was in possession of the original Note, which had been endorsed in blank. Fannie Mae, as of that date, was the owner of the loan with a servicing agreement with Aurora which directed and authorized Aurora to act in Aurora's name on Fannie Mae's behalf.

---

[2] MERS Ex. 4 at p. 2.

[3] *Id.* at p. 4.

[4] *Id.* at p. 4-5.

While the Note had been assigned several times prior to the bankruptcy, no assignment of the Deed of Trust had been recorded prior to that date. Therefore, as of the date of bankruptcy, the records of the Recorder of Deeds still showed that New Century was the grantee under the Deed of Trust and that MERS, as nominee for New Century, was the beneficiary under the Deed of Trust. Thereafter, on May 13, 2010, which was after the Debtor filed this bankruptcy case, MERS executed an Assignment of Deed of Trust assigning its interest in the Deed of Trust to Aurora Loan Services, LLC. On May 19, 2010, Aurora Loan Services, LLC filed this Motion for Relief from Stay. As of that date, Aurora Loan Services, LLC was both the holder of the Note and the record owner of the Deed of Trust.

The Trustee objected to the motion for relief, for two main reasons.[5] The Trustee's first contention is that the MERS structure, discussed below, created a split between the ownership of the Note and the Deed of Trust at the time the loan was initially made by New Century, such that no noteholder has ever held a valid lien on the residence. And secondly, the Trustee contends that even if the MERS structure properly authorized MERS to act on behalf of the holder of the Deed of Trust, that holder as of the date of bankruptcy was still New Century. Since the Note as of that

---

[5] The movant was able to produce the original promissory note, thereby satisfying the concern at issue in *In re Box*, ___ B.R. ____, 2010 WL 2228289 (Bankr. W.D. Mo. June 3, 2010).

date was held by Aurora, the Trustee contends that MERS (on behalf of New Century) was prohibited by the automatic stay from recording the assignment of the Deed of Trust to Aurora. Since Aurora was not a creditor holding a valid property interest in the Debtor's real estate as of the date of bankruptcy, the Trustee contends, it lacks standing to bring the motion for relief.

To respond to those concerns, MERS moved to intervene. The Court granted MERS' request, and scheduled a hearing for the parties to present evidence as to, among other things, the role of MERS, and whether its role affects the enforceability of the Deed of Trust.

## APPLICABLE MISSOURI LAW

Whether Aurora holds a valid Deed of Trust is determined pursuant to Missouri law.[6] In *Bellistri v. Ocwen Loan Servicing, LLC*,[7] the principal case relied upon by the Trustee, the Missouri Court of Appeals recently described applicable Missouri mortgage law. Since a portion of that opinion is relied on as the principal basis for the Trustee's argument here, I quote it as follows:

> Generally, a mortgage loan consists of a promissory note and security instrument, usually a mortgage or a deed of trust, which secures payment on the note by giving the lender the ability to foreclose on the property. Typically, the same person holds both the note and the deed of trust. In

---

[6] *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979).

[7] 284 S.W.3d 619 (Mo. Ct. App. 2009).

the event that the note and the deed of trust are split, the note, as a practical matter becomes unsecured. The practical effect of splitting the deed of trust from the promissory note is to make it impossible for the holder of the note to foreclose, unless the holder of the deed of trust is the agent of the holder of the note. Without the agency relationship, the person holding only the note lacks the power to foreclose in the event of default. The person holding only the deed of trust will never experience default because only the holder of the note is entitled to payment of the underlying obligation. The mortgage loan become ineffectual when the note holder did not also hold the deed of trust.

When the holder of the promissory note assigns or transfers the note, the deed of trust is also transferred. An assignment of the deed of trust separate from the note has no "force." Effectively, the note and the deed of trust are inseparable, and when the promissory note is transferred, it vests in the transferee all interest, rights, powers and security conferred by the deed of trust upon the beneficiary therein and the payee in the notes.[8]

In *Bellistri v. Ocwen,* a nonbankruptcy case, the issue was whether a purported assignee of a Deed of Trust had standing to challenge a tax sale of the property that had been subject to the Deed of Trust. The underlying issue was whether the assignee, Ocwen, had a property interest under the Deed of Trust. The borrower had executed a Promissory Note in favor of lender BNC Mortgage, Inc. As here, the Deed of Trust named not BNC, but MERS as the beneficiary, as nominee for BNC and its successors and assigns. The Note was payable to BNC, not MERS. The obligor had failed to pay real estate taxes, so a tax sale was held, and a certificate of purchase was issued to the

---

[8] *Id.* at 623 (Mo. Ct. App. 2009) (*citing* Restatement (Third) of Property (Mortgages) § 5.4. Comment; *George v. Surkamp,* 336 Mo.1, 76 S.W.2d 368, 371(1934); *St. Louis Mut. Life Ins. Co. V. Walter,* 329 Mo. 715, 46 S.W.2d 166, 170 (1931)) (internal quotation marks omitted).

buyer, Bellistri. Under Missouri law, the buyer is obligated to send a notice of redemption to those claiming an interest in the property. Bellistri sent such notice to BNC, but not to MERS. The notice period ran without redemption, so the collector of revenue issued Bellistri a collector's deed. Thereafter, MERS, as nominee for BNC, caused to be recorded an assignment of the Deed of Trust to Ocwen Loan Servicing. The issue in the subsequent quiet title action was whether Ocwen had standing to challenge the sale. Among other things, Ocwen wanted to show that the process was defective because Bellistri should have sent notice to MERS, as nominee for BNC. Ocwen made no claim that it should have received notice itself, presumably because it did not enter the picture until after the redemption period had run.

The evidence in *Bellistri v. Ocwen* was that MERS had attempted to assign both the Note and Deed of Trust to Ocwen by assigning the Deed of Trust, and including language stating that the assignment of the Deed of Trust also transferred the Note. The Court thus held that the recorded document attempted to assign not only the Deed of Trust, but also the Note, which was held by BNC. However, while BNC had given MERS authority to serve as its nominee on the Deed of Trust, and to assign such Deed of Trust at its direction, there was no evidence that BNC had given MERS authority to assign the Note. Therefore, the Court held, when MERS recorded the assignment of the Deed of Trust to Ocwen without properly assigning the Note, the Note remained

6

with BNC.  And, MERS' attempt to assign the Deed of Trust, without an effective assignment of the Note, was of "no force."  The upshot is that the Note remained with BNC (because MERS did not have authority to assign the Note), and the Deed of Trust remained with MERS, as nominee for BNC (because the assignment of the Deed of Trust without the Note was of "no force").  Since Ocwen failed to prove that it held either the Note or the Deed of Trust, the Court held that it lacked a legally cognizable interest in the real estate, and therefore did not have standing to challenge the sale. Because Ocwen lacked standing, the Court did not reach the question of whether MERS, as BNC's nominee, was entitled to receive notice of the redemption period. Indeed, that was the issue in *MERS v. Bellistri*, a later declaratory judgment action brought by MERS concerning the same sale in the United States District Court for the Eastern District of Missouri.[9]  There, the District Court held that under Missouri's tax foreclosure statute, MERS was entitled to notice of redemption rights since it held bare legal title to the Deed of Trust as nominee for the noteholder.  Therefore, MERS also had standing to challenge the validity of the collector's deed issued after the redemption period had expired. While not necessary to our analysis here, the District Court also held that MERS held a property interest that was entitled to constitutional

---

[9] *Mortgage Electronic Registration Systems, Inc. v. Bellistri*, 2010 WL 2720802 (W.D. Mo. July 1, 2010).

protection.

In the Missouri Court of Appeals' *Bellistri v. Ocwen* opinion, the Court did not decide whether the failure to prove assignment of the Note had any impact on the borrower's obligations under the Note and Deed of Trust, because the borrower was not the complaining party.[10] Nor did it decide whether a split had occurred at the inception of the loan at issue there due to the involvement of MERS, the principal argument raised by the Trustee here. And, if such a split did occur, the Court did not decide whether, at some later date, the Note and Deed of Trust could be reunited, such that the holder would then possess a property interest in the real estate and be able to foreclose in the event of default. Indeed, the Court did not decide that there had been a split at all – just that Ocwen had not shown it held the Note or Deed of Trust, and therefore had not shown that it had a property interest sufficient to challenge the sale.

The Trustee nevertheless relies on the quoted language to argue that the involvement of MERS does create a split at the inception of a loan, and that the loan was therefore an unsecured one. Because the borrower here (the Debtor) filed a bankruptcy case before the Note and Deed of Trust were reunited, the Trustee raises the additional issue that any reunification is barred by the automatic stay. The Trustee

---

[10] The borrower (Crouther) was named as a defendant in the suit, because the purchaser wanted to both quiet title in his name, and to eject the borrower from the property, but there is no indication in the opinion that such borrower actively opposed or participated; in any event, the opinion does not deal with any claim that he may have made in the trial court.

8

asserts that, based on *Bellistri v. Ocwen*, since the movant, Aurora, did not hold a secured claim at the time of the bankruptcy filing, the automatic stay prevents Aurora from ever taking an assignment of the Deed of Trust, and thereby becoming a secured creditor.

If the Trustee is correct, the Trustee would presumably sell the Debtor's home at fair market value, and the net proceeds would be paid to all the Debtor's unsecured creditors, which would then include Aurora.[11] If the Trustee is not correct, then the mortgage signed by the Debtor is valid, there is no equity in the property for unsecured creditors, and the Trustee has no interest in opposing the motion for relief from the stay.

## THE ROLE OF MERS

The Court in *Bellistri v. Ocwen* stated that Missouri law allows a noteholder to appoint an agent to hold the Deed of Trust in its name, thereby allowing the agent to foreclose on behalf of the noteholder. So, the question is whether MERS, as nominee, has been the agent of the noteholders here. Therefore, the role of MERS is critical.

At the hearing, William C. Hultman, the secretary and treasurer of MERS, testified, and offered into evidence its Membership Agreements with New Century and

---

[11] Any claim of the Debtor to a homestead exemption out of such proceeds would be subject to § 522(g) of the Bankruptcy Code.

9

all assignees of the Debtor's Note here. He testified that MERS was developed in order to allow the rapid transfer of mortgages. Those who purchase mortgages in the secondary market, such as Fannie Mae and Freddie Mac, had determined that the existing system, under which each assignment of a mortgage or deed of trust needed to be recorded, was expensive and cumbersome, inhibited investment in the mortgage market, and increased the costs to borrowers. The MERS system was therefore established to provide a central address for recording mortgages, and for taking certain specified actions at the direction of the holder of the note. What MERS does is to provide a system for registering who holds a particular note, and who is therefore empowered to exercise rights under the corresponding mortgage or deed of trust. Thus, each mortgage is given its own identification number for the life of the loan, and any member of the MERS system, as well as borrowers, may inquire as to who holds such loan at any given time, and how to contact them.[12] As of now, MERS has over 5000 members, including Fannie Mae, Freddie Mac, and all of the 100 top home lenders, as well as several companies that service loans on behalf of such lenders. The MERS

---

[12] The Trustee argued that one of the problems with the MERS system is that borrowers often do not know who the holder of their loan is, and, thus, where to send payments. While I am sympathetic to that concern because debtors often testify that they do not know where to send payments, Mr. Hultman did testify that the MERS website posts a toll-free number that borrowers may call to learn how to obtain information about the holder and status of their loan, and that MERS receives thousands of calls each year from such borrowers. Perhaps the availability of that information could be better publicized, but that does not affect the issue of whether MERS is acting as agent for its members.

system was used to record mortgage documents in approximately fifty percent of all currently outstanding home loans in the country, including approximately 600,000 in Missouri.

As to the Debtor here, the evidence showed that New Century was the grantee, and MERS, as nominee for New Century and its successors and assigns, was the beneficiary under the Deed of Trust from the date of the loan's inception until the date of the bankruptcy. By the time the Debtor filed this bankruptcy case, the Note had been assigned to three succeeding holders, each of whom was at the time a member of MERS, and had thereby agreed that MERS should serve as its nominee in connection with the Deed of Trust. The last such assignee was Aurora, which held possession of the Note as of the date of bankruptcy. After the bankruptcy case was filed, Aurora directed MERS to record an assignment of the Deed of Trust to it. According to Mr. Hultman, MERS members often wait until a default or bankruptcy case is filed to have a mortgage or deed of trust assigned to them so that they can take steps necessary to seek stay relief and/or to foreclose. The reason they wait is that, if a note is paid off eventually, as most presumably are, MERS is authorized to release the mortgage without going to the expense of ever recording any assignments. While MERS has authority to foreclose on behalf of the lender, it only would do so at the express direction of the member, and then only if possession of the note were transferred to it.

11

In most instances where a foreclosure becomes necessary, Mr. Hultman testified, the members instead choose to have the Deed of Trust, and the right to foreclose under it, transferred to them. Until then, MERS serves as a placeholder, so as to provide notice to other potential lenders that debtors have mortgaged their property, without inhibiting the assignment of their mortgages on the secondary market.

## ANALYSIS

As shown, under Missouri law, the holder of a note that is in default is generally entitled to foreclose under the deed of trust, regardless of whether the deed of trust has actually been assigned to such holder.[13] Thus, the effect of the MERS system in Missouri is that even if, as here, the deed of trust is recorded in the name of the original lender (*i.e.,* New Century, in this case), the holder of the note, whoever it is, would be entitled to foreclose, even if the deed of trust had not been assigned to it. However, as *Bellistri v. Ocwen* demonstrates, the holder of such note would not be entitled to notice of a tax sale or of a foreclosure by another creditor of the borrower unless it also has a validly recorded assignment of the deed of trust at the time of such notice.

In addition, as *Bellistri v. Ocwen* acknowledged, under Missouri law, one who holds rights under a deed of trust may appoint an agent to exercise some or all of those

---

[13] *Bellistri v. Ocwen,* 284 S.W.3d at 623 ("Effectively, the note and the deed of trust are inseparable, and when the promissory note is transferred, it vests in the transferee all interest, rights, powers and security conferred by the deed of trust upon the beneficiary therein and the payee in the notes.").

rights on its behalf.[14] While the Deed of Trust here describes MERS as "nominee," as opposed to "agent," for New Century and its successors and assigns, Mr. Hultman testified that that term was chosen instead of "agent" because, in the securities industry, a nominee is one who may act on behalf of the principal, but for limited purposes only. Since one of the purposes of MERS was to make the securitization process more efficient and attractive to outside investors, he testified that after a great deal of discussion with representatives of Fannie Mae, Freddie Mac, and others, the term "nominee" was chosen instead of "agent." Regardless of the term used, he testified, MERS has authority to act on behalf of its members in a limited capacity, at their direction, and so should be treated as their agent when taking such actions.

The legal definition of a nominee is a "party who holds bare legal title for the benefit of others."[15] The Deed of Trust here states that MERS holds legal title in its capacity "as nominee for the Lender and the Lender's successors and assigns." The Deed of Trust also grants MERS broad rights, again as a nominee for Lender and Lender's successors and assigns, "to exercise any or all" of the interests granted by the Borrower under the Deed of Trust, "including but not limited to, the right to foreclose

---

[14] *Id.* (acknowledging that the holder of a deed of trust may act as the agent of the holder of the note).

[15] Black's Law Dictionary (8th ed. 2004) at 1076. *See also Mortgage Electronic Registration Systems, Inc. v. Bellistri*, 2010 WL 2720802 at *10-12 (E.D. Mo. July 1, 2010).

and sell the Property, and to take any action required of Lender. . . ."

This is more than sufficient to create an agency relationship between MERS and the Lender and its successors in Missouri, regardless what term they used to describe that relationship.[16] All that is required is a manifestation of the parties' assent that the agent will act on behalf of the principal and subject to his control.[17] An agency relationship arises where, as here, one party is specifically authorized to act on behalf of another in dealings with third persons.[18] The language of the recorded Deed of Trust clearly authorizes MERS to act on behalf of the Lender in serving as the legal title holder to the beneficial interest under the Deed of Trust and exercising any of the rights granted to the Lender thereunder.

Aurora, and all of the prior note-holders, signed up for this agency relationship in their membership agreements, which provide that MERS "shall" serve as mortgagee of record with respect to each mortgage loan that the Member registers on the MERS System and provide that "MERS shall at all times comply with the instructions of the holder of mortgage loan promissory notes."[19]

Thus, MERS was the agent for New Century under the Deed of Trust from the

---

[16] *Bach v. Winfield-Foley Fire Protection Dist.,* 257 S.W.3d 605, 608 (Mo. 2008).

[17] *Id.*

[18] *Weiland v. Ticor Title Ins. Co.,* 755 S.W.2d 659, 664 (Mo. Ct. App. 1988).

[19] *See* Hultman Affidavit, ¶¶ 7, 10-12, and Exhibit B, § 5 and 6.

inception, and MERS became agent for each subsequent note-holder under the Deed of Trust when each such noteholder negotiated the Note to its successor and assign. When Aurora acquired the right to enforce the Note as the note-holder, MERS held the beneficial interest in the Deed of Trust on behalf of Aurora and had the right to enforce all the rights granted to New Century and its successors and assigns in the Deed of Trust. Therefore, as of the date of bankruptcy, Aurora held both the Note and the right, thorough its agent MERS, to foreclose. Aurora's lien was therefore valid, and there was no equity in the property as of that date.

Nor did the subsequent assignment of the Deed of Trust to Aurora violate the automatic stay. While in effect, the automatic stay provides that creditors may not take specified actions against the debtor or the debtor's property without first obtaining relief to do so.[20] Thus, if a creditor holds a lien which was not properly perfected at the time of bankruptcy, the automatic stay generally prohibits such creditor from thereafter taking steps to perfect. That's because in bankruptcy a lien which is unperfected on the filing date is treated as unsecured for purposes of distribution. But the recording of an *assignment* of a deed of trust, or the transfer of a note, is not an action against the debtor or the debtor's property. On the date of bankruptcy, the Debtor was obligated on a mortgage which was held by MERS as nominee for

---

[20] 11 U.S.C. § 362.

whatever assignee held the Note, which happened to be Aurora here.  Assignment of the accompanying Deed of Trust did not violate the stay because it did not result in perfection of a lien – the lien was already perfected.

## CONCLUSION

Assuming that the note-holder is a member of MERS, thereby creating an agency relationship, the fact that MERS is identified as the beneficiary under a deed of trust for the benefit of the note-holder does not create a split between the note and deed of trust.  And, again, since the deed of trust follows the note, this is true for subsequent parties to whom the note is properly assigned, so long as the assignees are also members of MERS.

Here, as stated above, the evidence was that Aurora has possession of the original Note, which it produced at the hearing, and which is endorsed in blank.  As I stated in *In re Box*, in order to prove that the movant is the holder of a note entitled to enforce it and the corresponding deed of trust, the movant must provide sufficient evidence that is in possession of the original note, or comply with the lost note provisions.[21]  In addition, the evidence was that all of the assignees of the Note, including Aurora, were members of MERS who was, at all times, the beneficiary under the deed of trust as agent for each of the assignees, including Aurora.  As such, Aurora

---

[21] *In re Box*, ___ B.R. ____, 2010 WL 2228289 (Bankr. W.D. Mo. June 3, 2010).

established that it was the holder of the Note, and thus entitled to enforce both the Note and Deed of Trust, on the date Aurora moved for relief from stay. Therefore, it had standing to bring that motion.

ACCORDINGLY, the Motion for Relief from Stay filed by Aurora Loan Services, LLC is GRANTED.

IT IS SO ORDERED.

/s/ Arthur B. Federman
Bankruptcy Judge

Date: 9/19/2010

Attorney for movant to serve parties not receiving electronic notice